**SUMITOMO REAL ESTATE SALES (N.Y.), INC., Plaintiff**

v.

**QUANTUM DEVELOPMENT CORP., et al., Defendants.**

**Civil No. 05–2333 (JAG).**

United States District Court, D. Puerto Rico.

June 12, 2006.

Jose A. Axtmayer–Balzac, Axtmayer, PSC, Axtmayer, PSC, San Juan, PR, for Plaintiffs.

Antonio A. Arias–Larcada, McConnell Valdes, San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

On December 27, 2005, plaintiff Sumitomo Real Estate Sales (N.Y.), Inc. ("Sumitomo") filed suit against Quantum Development Corp. ("Quantum"), Virtus Investments, Ltd., Desarrollos Urbanos Arloy, C.A., Eduardo Velazco Castillo, and Armando Loynaz Reveron (collectively "defendants"), seeking damages for breach of contract, misrepresentation, and "dolo" (fraud), or, in the alternative, restitution for unjust enrichment (Docket No. 1). The Court's jurisdiction is premised upon diversity of citizenship pursuant to 28 U.S.C. § 1332. On February 16, 2006, defendant Quantum moved to dismiss Sumitomo's claims pursuant to Fed.R.Civ.P. 12(b)(2) for lack of standing (Docket No. 9). On April 17, 2006, Sumi-tomo filed an opposition (Docket No. 11). On May 22, 2006, Quantum replied to Sumitomo's opposition (Docket No. 14). For the reasons discussed below, the Court **DENIES** Quantum's motion to dismiss.

## FACTUAL BACKGROUND

In April, 2004, Sumitomo entered into a Mortgage Placement Agency Agreement (the "Agreement") with Quantum pursuant to which Sumitomo was appointed as defendants' "exclusive broker and agent with the right to negotiate and obtain a mortgage loan commitment(s) or other financing arrangement ... for the Property [then] referred to as Monte Palatium Condominium Project [(the "Project")]...." (Docket No. 1, Exh. A). The Agreement further provided that Sumitomo would earn a commission equal to one percent of any commitment or financing arrangement entered into by defendants during the term of the Agreement or during the 120 days after its termination. The commission was to be due and payable in full upon initial funding of any such commitment or financing arrangement.

Thereafter, through Sumitomo's efforts, Quantum entered into a Commitment Letter (the "Commitment") with Scotiabank de Puerto Rico ("Scotiabank") for financing the development of the Project. Sumitomo claims to have earned a commission from the Commitment which, pursuant to the terms of the Agreement, is payable upon defendants' receipt of initial funding. Prior to such funding, however, Quantum entered into a financing arrangement with R–G Premier of Puerto Rico by which it refinanced the first mortgage lien on the Property on which it intends to develop the Project. Sumitomo believed defendants no longer intended to use financing provided by the Scotiabank Commitment and so invoiced defendants for the commis-

sion which Sumitomo claims is now due. To date, defendants have not paid the invoice.

## DISCUSSION

### A. *Standard of Review for Motion to Dismiss for Lack of Standing*

A defendant may move to dismiss an action for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2) or for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). Since the justiciability requirement of standing is generally viewed as a component of subject matter jurisdiction, *see, e.g., Dubois v. U.S. Dep't of Agric.*, 102 F.3d 1273, 1280–81 (1st Cir. 1996), standing challenges are more appropriately brought under Fed.R.Civ.P. Rule 12(b)(1). *See Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 362–63 (1st Cir.2001) (stating justiciability issues should be analyzed under Rule 12(b)(1)). Accordingly, this Court evaluates Quantum's motion to dismiss under the standard for motions brought pursuant to Rule 12(b)(1).

As courts of limited jurisdiction, federal courts have the duty of narrowly construing jurisdictional grants. *See, e.g., Alicea–Rivera v. SIMED*, 12 F.Supp.2d 243, 245 (D.P.R.1998). Motions brought under Rule 12(b)(1) are subject to the same standard of review as Rule 12(b)(6) motions. *Negron–Gaztambide v. Hernandez–Torres*, 35 F.3d 25, 27 (1st Cir.1994); *Torres Maysonet v. Drillex, S.E.*, 229 F.Supp.2d 105, 107 (D.P.R.2002). Under Rule 12(b)(6), dismissal is proper "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." *Gonzalez–Morales v. Hernandez–Arencibia*, 221 F.3d 45, 48 (1st Cir. 2000) (*quoting Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir. 1990)). Under Rule 12(b)(1) dismissal would be proper if the facts alleged reveal a jurisdictional defect not otherwise remediable.

### B. *Choice of Law in Federal Diversity Suit*

■ In moving to dismiss Sumitomo's complaint, Quantum relies on the door-closing statute of the General Corporations Law of 1995 ("General Corporations Law") which denies standing to any foreign corporation "doing business" in the Commonwealth of Puerto Rico without a certificate of authorization from the Department of State. P.R. Laws Ann. tit. 14, § 3163(a) (2000). Because Sumitomo invoked the jurisdiction of this Court based solely on diversity of jurisdiction pursuant to 28 U.S.C. § 1332, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny are controlling. Accordingly, this Court's determination of whether to apply the door-closing statute of the General Corporations Law in the case at bar must be guided by *Erie's* twin aims of discouraging forum-shopping among potential litigants and avoiding inequitable administration of the law.

By reason of the twin aims expressed in *Erie*, the United States Supreme Court held in *Woods v. Interstate Realty Co.*, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949), that a federal court sitting in diversity must apply a state door-closing statute barring an unregistered foreign corporation from bringing suit in the state courts. *Accord Tel–Pic Syndicate v. Station WIBS*, 94 F.Supp. 888 (D.P.R.1951) (applying similar door-closing provision of Puerto Rico Corporations Law, a predecessor of the General Corporations Law, in a federal diversity case). In *Woods* the Court noted that when a party "is barred from recovery in the state court, he should likewise be barred in the federal court. The contrary result would create discriminations against citizens of the State in favor of those authorized to invoke the diversity jurisdiction of the federal courts." *Woods*, 337 U.S. at 538, 69 S.Ct. 1235. In keeping

with cited precedent and the twin aims of *Erie*, this Court applies the door-closing statute of the General Corporations Law in this case.

## C. General Corporations Law of 1995

■ The General Corporations Law requires foreign corporations to obtain a certificate of authorization from the Department of State before doing business in the Commonwealth. P.R. Laws Ann. tit. 14, § 3162(a) (2000). "Any foreign corporation doing business in the Commonwealth without a certificate of authorization may not initiate any proceeding in any court of the Commonwealth until it obtains such certificate." P.R. Laws Ann. tit. 14, § 3163(a) (2000). Sumitomo is a foreign corporation as defined by the General Corporations Law, P.R. Laws Ann. tit. 14, § 3161 (2000), and, at the time of the filing of this suit, did not have a certificate of authorization from the Department of State (*See* Docket No. 9, Exh. 1). Sumitomo's acquisition of the Commitment letter for Quantum, however, does not constitute "doing business" in the Commonwealth of Puerto Rico and, as such, the door-closing statute of the General Corporations Law does not deny Sumitomo standing to bring this suit.

The General Corporations Law provides a non-exhaustive list of activities which do not constitute doing business in the Commonwealth. Among this list is the "[c]reat[ion] or acqui[sition of] debts, mortgages or personal and real property securities." P.R. Laws Ann. tit. 14, § 3164(a)(7) (2000). Sumitomo's activities with Scotiabank fall squarely within this exception and, thus, Sumitomo is specifi-

cally exempted from the registration requirement.

Quantum urges a narrower reading of § 3164(a)(7), arguing that its application should be limited to the creation or acquisition of mortgages for the foreign corporation itself rather than for third persons. Although this argument is creative, this Court declines to read beyond the plain language of the statute to impute restrictions which are not facially apparent.[1] Consequently, this Court relies on the plain language of § 3164(a)(7) and finds that Sumitomo's acquisition of the Commitment for Quantum does not constitute "doing business" in the Commonwealth so as to require a certificate of authorization and thus the door-closing statute of the General Corporations Law does not deny Sumitomo standing to bring this suit.

## D. Act to Regulate the Financial Intermediation Business

■ Quantum's argument that the Act to Regulate the Financial Intermediation Business ("ARFIB"), P.R. Laws Ann. tit 7, §§ 1071–1087 (2000), in conjunction with the General Corporations Law denies Sumitomo standing is also unpersuasive. Section 3162(b) of the General Corporations Law states:

"In addition to complying with the requirements to do business in the Commonwealth pursuant to the procedures provided in this subtitle, foreign corporations engaged in banking ... or any other business regulated by law in a particular manner, before doing business in the Commonwealth, shall comply with

---

**1.** Contrast § 3164(a)(7) of the General Corporations Law with a similar provision of the Rhode Island Business Corporation Act which states that "Creating, *as borrower or lender,* or acquiring indebtedness or mortgages or other security interests in real or personal property" does not constitute transacting business within the state. R.I. Gen. Laws § 7–1.2–1401(b)(7) (2005) (emphasis added). If the Puerto Rican legislature had intended to limit the application of § 3164(a)(7) as Quantum urges, they would have used language similar to that of the Rhode Island Business Corporation Act.

any particular requirement provided by the laws regulating such industries."

P.R. Laws Ann. tit. 14, § 3162(b) (2000). Quantum argues that Sumitomo is subject to and has violated the regulatory provisions of the ARFIB and, as such, is in violation of § 3162(b) of the General Corporations Law. Quantum claims this violation denies Sumitomo standing to bring this suit. This argument, however, is based on an overly broad reading of the statutory language of the door-closing provision of the General Corporations Law which this Court declines to adopt.

The door-closing provision of the General Corporations Law states that "[a]ny foreign corporation *doing business* in the Commonwealth *without a certificate of authorization* may not initiate any proceeding in any court of the Commonwealth until it obtains such certificate." P.R. Laws Ann. tit. 14, § 3163(a) (2000) (emphasis added). This language makes clear that the courts' doors are closed only to those foreign corporations which *do business* in the Commonwealth *without a certificate of authorization*. The doors are not closed to foreign corporations which are not "doing business" in the Commonwealth and, moreover, are not necessarily closed to those foreign corporations which may fail to "comply with *any* particular requirement provided by the laws regulating such industries." P.R. Laws Ann. tit. 14, § 3162(b) (2000) (emphasis added). To argue otherwise would prove too much and require this Court to turn away any foreign corporations for any noncompliance with any requirement of any law regulating the foreign corporation's industry. Surely this was not the intent of the legislature. Therefore, this Court declines to adopt such a broad reading of the door-closing statute of the General Corporations Law and instead chooses to follow the plain language of the statute in finding that its application is limited to only those foreign corporations which do business in

the Commonwealth without a certificate of authorization. Because Sumitomo was not "doing business" as defined by the General Corporations Law, it was not required to obtain a certificate of authorization and, as such, this Court's door remains open to them.

### CONCLUSION

For the foregoing reasons, the Court **DENIES** Quantum's motion to dismiss.

IT IS SO ORDERED.